UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| MARIA MICHAILIDOU<br><br>             Plaintiff<br><br>v.<br><br>EASTERN MAINE MEDICAL CENTER d/b/a<br>NORTHERN MAINE LIGHT EASTERN<br>MAINE MEDICAL CENTER<br><br>And<br><br>BRAD E. WADDELL<br><br>             Defendants. | CIVIL ACTION<br>Docket No: 1:23-cv-00352-JAW |

## DEFENDANTS' ANSWER TO COMPLAINT AND
## NORTHERN LIGHT EASTERN MAINE MEDICAL CENTER'S
## COUNTERCLAIM AGAINST PLAINTIFF

Northern Light Eastern Maine Medical Center ("EMMC") and Brad E. Waddell, MD

("Dr. Waddell") (collectively, "Defendants"), through counsel, submit this Answer to Plaintiff's

Complaint.  In addition, EMMC asserts a counterclaim against Plaintiff, as set forth below.

## ANSWER

1.      Defendants admit that Plaintiff is a Greek national who previously resided in

Penobscot County.  Defendants are without knowledge or information sufficient to form a belief

as to the truth of the remaining allegations in Paragraph 1, and on that basis deny the same.

2.      Defendants admit the allegations contained in Paragraph 2.

3.      Defendants admit the allegations contained in Paragraph 3.

4.      Defendants admit that Plaintiff moved to the United States after completing

medical school at the University of Patras.  Defendants are without knowledge or information

sufficient to form a belief as to the truth of the remaining allegations in Paragraph 4, and on that basis deny the same.

5.      Defendants admit the allegations in Paragraph 5.

6.      Defendants admit the allegations in Paragraph 6.

7.      Defendants admit the allegations in Paragraph 7.

8.      Defendants admit that one of the ways for Plaintiff to remain in the United States was to find employment at a hospital that would sponsor an H-1B visa and fulfill the requirements of a three-year waiver.

9.      Defendants deny the allegations in Paragraph 9.

10.     Defendants admit that Plaintiff entered a three-year contract with EMMC, and further admit that the original contract is attached as Exhibit A to Plaintiff's Complaint.

11.     Defendants admit that EMMC employs a number of medical professionals with H-1B visas.  Defendants deny the remaining allegations in Paragraph 11, including but not limited to the suggestion that EMMC chooses to pay these medical professionals less.  To the contrary, the amount EMMC pays these medical professionals is established by law.  Moreover, EMMC paid for all the legal and other costs associated with Plaintiff's J-1 waiver and H-1B Visa sponsorship, as well as her Green Card application.

12.     Defendants admit that Plaintiff began working at EMMC as a colorectal surgeon in August 2018.  Defendants deny the remaining allegations in Paragraph 12 and further state as follows:  EMMC sent Plaintiff to emotional intelligence training because her interactions were not consistently professional; and Plaintiff was placed on FPPE because clinical judgment did not consistently meet the standard of care.  Far from demeaning, yelling at, or blaming Plaintiff,

Defendants supported and provided Plaintiff with these resources in the hope that she might improve and remain a valued member of the medical staff.

13.     Defendants deny each and every allegation in Paragraph 13.

14.     Defendants deny each and every allegation in Paragraph 14.

15.     Defendants deny each and every allegation in Paragraph 15, except Defendants admit that Plaintiff engaged in unprofessional behavior and struggled to accept feedback and constructive criticism, leading in part to Plaintiff's placement on FPPE.

16.     Defendants deny each and every allegation in Paragraph 16.

17.     Defendants admit that Plaintiff was placed on a service-level Focused Professional Practice Evaluation (FPPE), which is a corrective action plan designed to support physicians about whom there are legitimate performance or conduct-related concerns. Defendants deny the remaining allegations in Paragraph 17.

18.     Defendants deny each and every allegation in Paragraph 18.

19.     Defendants deny each and every allegation contained in Paragraph 19, except Defendants admit that other physicians have been placed on FPPE for reasons relating to their clinical performance and/or conduct.  Defendants further admit that, while many physicians successfully complete their FPPE, others do not and are ultimately terminated.

20.     Defendants deny each and every allegation contained in Paragraph 20, except Defendants admit that the FPPE was supported by feedback from peers and others.

21.     Defendants admit that there is no "appeals process" for a service-level FPPE, which is simply a performance improvement plan designed to support practitioners who require improvement in one or more areas.  Plaintiff was expressly invited to submit a written response

to the FPPE, however, and did not do so.  Defendants deny the remaining allegations in Paragraph 21.

22.     Defendants deny each and every allegation in Paragraph 22, except Defendants admit that, as the concerns about Plaintiff's performance persisted and became more acute and as it became increasingly clear that Plaintiff would likely be terminated for cause, Dr. Waddell expressed hope that Plaintiff would find another job, so she could remain in the United States.

23.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations concerning the words of a gastroenterologist, and therefore deny the same.  Defendants deny each and every remaining allegation in Paragraph 23.

24.     Defendants admit the allegations in Paragraph 24.

25.     Defendants deny the allegations in Paragraph 25 and further state as follows: Although some of Plaintiff's cases led to "excellent outcomes," others led to poor outcomes as a result of avoidable complications.

26.     Defendants admit that Plaintiff demonstrated some initial improvement in the area of interpersonal skills, and that she was told as much.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 26, and on that basis deny the same.

27.     Defendants deny that Plaintiff asked to discuss all elective cases with one of the three senior members of the NESM group for the first month of the FPPE.  Rather, the FPPE required Plaintiff to do so.  Defendants deny that Plaintiff was unaware that case review would continue past the end of the month.  The contents of the FPPE speak for themselves, and Defendants deny any allegations that are contrary to the terms of the FPPE.

4

28.     Defendants deny the allegations in Paragraph 28 and further state as follows: Plaintiff's initial FPPE was clearly designated with a start date of October 30, 2019, and an anticipated end date of February 29, 2020.

29.     Defendants admit that the FPPE required observation of at least 10 major colon resections over the anticipated four months of the FPPE.  Defendants further admit that the observation period was extended because of the COVID-19 pandemic.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations concerning what Plaintiff was told by others, and on that basis deny the same.

30.     Defendants admit that EMMC learned in February 2020 that AR Gould was hiring a colorectal surgeon and that discussions about EMMC sharing this colorectal surgeon ensued thereafter.  Defendants deny there were not enough cases to accommodate an additional surgeon. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 30, and on that basis deny the same.

31.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations concerning an April 2020 email, and on that basis deny the same. Defendants further state as follows:  In April of 2020, Plaintiff knew or should have known that she had not completed her FPPE.  Thereafter, in July of 2020, Plaintiff scheduled a robotic procedure without arranging for a proctor as required under the terms of her FPPE.  Dr. Waddell and Dr. Huang reminded Plaintiff, in writing, that her FPPE was still in effect and required her to complete 5 proctored robotic cases.

32.     Defendants deny the allegations in Paragraph 32 and further state as follows: Physicians Assistants independently voiced significant concerns about Plaintiff's clinical and interpersonal skills.  Indeed, a PA ultimately contacted Dr. Waddell on behalf of a group of PAs

who were no longer comfortable assisting Plaintiff in surgery because of their concerns about her clinical competence.

33.     Defendants deny the allegations in Paragraph 33.

34.     Defendants admit that hospital policy required each inpatient to be seen by a physician each day.  Defendants deny the remaining allegations in Paragraph 34.

35.     Defendants deny the allegations in Paragraph 35 and further state as follows:  Far from offering to see her own patients on a daily basis, Plaintiff wrote precisely the opposite: "I just don't want to be in a situation where it's taken for granted that I will be seeing my patients and writing notes on a daily basis" and "If I'm planning on seeing [my patients] I'll let you know in advance."

36.     Dr. Waddell's May 14, 2020, email communication speaks for itself and Defendants deny that Paragraph 36 is an accurate characterization of the email.  Defendants specifically deny that Dr. Waddell instructed providers to lie and further deny that Dr. Waddell suggested providers violate hospital policy.  Indeed, in the same email communication that Plaintiff misleadingly quotes in Paragraph 36, Dr. Waddell stated that, if a PA saw one of his patients in the morning, he would wait until later in the day to visit the patient.  Defendants deny the remaining allegations in Paragraph 36.

37.     Defendants deny the allegations in Paragraph 37.  The communications that Plaintiff misleadingly quotes in her Complaint plainly establish that it was Plaintiff who resisted daily patient visits.

38.     Defendants deny the allegations in Paragraph 38.

6

39.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations concerning Dr. Villanueava's text message to Plaintiff, and on that basis deny the same.  Defendants deny the remaining allegations in Paragraph 39.

40.     Paragraph 40 contains an incomplete sentence, with no subject.  Defendants deny the allegations in Paragraph 40.

41.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 41, and on that basis deny the same.  Defendants further state that Dr. Villanueva was also very critical of Plaintiff in writing, going so far as to say that watching Plaintiff perform surgery was "like watching a plane that can crash any time."

42.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 42, and on that basis deny the same.

43.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 43, and on that basis deny the same.

44.     Defendants deny the allegations in Paragraph 44 concerning Dr. Waddell's "beratement" or "tyrannical treatment" of others.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 44, and on that basis deny the same.

45.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 45, and on that basis deny the same.

46.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 46, and on that basis deny the same.

47.     Defendants admit that, on August 25, 2020, Plaintiff and Dr. Huang met, in the presence of the Practice Manager, to discuss her progress with the FPPE.  Defendants deny the remaining allegations in Paragraph 47.

48.     Defendants admit that Dr. Huang told Plaintiff there were continued concerns about her performance, which were likely to lead to further action.  Defendants admit that Dr. Huang told Plaintiff that, in the event Medical Staff took steps to restrict her privileges or take disciplinary action, they would be required to report this to the Board of Medicine, and suggested she might wish to begin looking for employment elsewhere to avoid this result.  Defendants deny the remaining allegations in Paragraph 48.

49.     Defendants deny that Plaintiff had to ask Dr. Huang about her evaluations and deny that Dr. Huang was silent concerning Plaintiff's observed cases.   Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations concerning statements made to Plaintiff by Dr. Villanueva, and on that basis deny the same.

50.     Defendants deny that leadership wanted to dismiss Plaintiff.  To the contrary, on October 6, 2020, Dr. Waddell circulated a revised service-level FPPE, which, like the first FPPE, did not function to restrict Plaintiff's privileges and would not require any action by the Medical Staff or notice to the Board of Medicine.  Moreover, Dr. Huang suggested Plaintiff might want to look for another job because it was becoming increasingly unlikely that Plaintiff would successfully complete her FPPE, and leadership was hoping to avoid taking action against Plaintiff's privileges and/or employment.  Defendants are without knowledge of information sufficient to form a belief as to the truth of the allegations concerning Plaintiff's feelings or prospect of finding a new job, and on that basis deny the same.

51.     Defendants admit that Plaintiff met with Dr. Villanueva and the Practice Manager on October 1, 2020.  Defendants admit that Dr. Villanueva was cordial and supportive but deny the remaining allegations in Paragraph 51.

52.     Defendants deny each and every allegation in Paragraph 52, except Defendants admit that, ultimately, concerns about Plaintiff's clinical skills became acute and necessitated action.

53.     Defendants admit that Plaintiff was asked to meet with Dr. Clarke and was not informed of the purpose of the meeting prior to.  Defendants deny the remaining allegations in Paragraph 53.

54.     Defendants admit that, on October 9, 2020, Dr. Clarke provided Plaintiff with a letter of administrative suspension, with pay.  Defendants further admit that Plaintiff was informed that, while she would be paid during her suspension, she was relieved of all duty and not to come to the hospital until contacted, absent a medical emergency.  Defendants deny the remaining allegations in Paragraph 54.

55.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 55, and on that basis deny the same.

56.     Defendants deny the allegations in Paragraph 56 and further state as follows: EMMC provided Plaintiff's counsel with a copy of Plaintiff's personnel file, in response to their request.  Plaintiff's credentialing file is confidential by statute, and EMMC was therefore unable to provide the same.

57.     Defendants deny the allegations in Paragraph 57 and further states as follows: Plaintiff asked to resign in lieu of being terminated for cause, and in exchange for being allowed an opportunity to resign in lieu of termination, gave EMMC certain assurances, including but not

limited to that she would not assert a claim against EMMC for breach of contract.  Plaintiff's

pursuit of a breach of contract claim in this action constitutes a breach of the separation

agreement.  On November 17, 2020, Plaintiff submitted a letter of resignation, attributing her

decision to resign to "unforeseen, unforeseeable, and unanticipated circumstances . . . ."  Plaintiff

closed her resignation letter with the following: "I have appreciated my time and experience with

the hospital."

58.     Defendants are without knowledge or information sufficient to form a belief as to

the truth of the allegations concerning Plaintiff's communications with others, and on that basis

deny the same.  Defendants deny each and every remaining allegation in Paragraph 58, except

Defendants admit that a new colorectal surgeon, born in the United States, began working at

EMMC shortly after Plaintiff's resignation.

59.     Defendants admit that Exhibit B is a true and accurate copy of the Separation

Agreement.  The terms of this Agreement speak for themselves and Defendants deny that

Plaintiff has accurately characterized them in Paragraph 59.   Defendants deny the remaining

allegations in Paragraph 59 and further state as follows:  As required by law and as expressly

contemplated in the separation agreement, EMMC reported Plaintiff's resignation to the Board of

Medicine.  On December 22, 2020, the Board of Medicine wrote to Senior Physician Executive

Dr. James L. Clarke, requesting additional information, including but not limited to "written

statements signed or prepared by any witness."  Consistent with its statutory obligation, EMMC

(through Dr. Clarke) responded to the Board's request for information on December 28, 2020,

including a statement prepared by Dr. Waddell.  Dr. Waddell played no role whatsoever, as

"chair" or otherwise, in any Board of Medicine investigation or action relating to Plaintiff.

Indeed, Dr. Waddell formally recused himself from any involvement in the matter as a member of the Maine Board of Medicine.

60.     Defendants deny that Dr. Waddell served as chair of the Board of Medicine or otherwise played any role whatsoever in the Board's action with respect to Plaintiff.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 60, and on that basis deny the same.  Defendants further state as follows:  EMMC was required by statute to report Plaintiff's resignation to the Board of Medicine.  EMMC cannot be faulted for doing what the law required and is in fact statutorily immune from civil liability arising out of its mandatory reports to the Board of Medicine.

61.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 61, and on that basis deny the same.

62.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 62, and on that basis deny the same.  To the extent Plaintiff suggests that Defendants filed "complaints" against her with the Board of Medicine, Defendants deny the allegation.  To the extent Plaintiff suggests that the absence of Board of Medicine action against her license equates to an affirmative finding by the Board that she complied with the standard of care, Defendants deny the allegation.   EMMC reported Plaintiff's resignation to the Board, as it was legally required to do, and answered the Board's subsequent requests for information, as it was legally required to do.

63.     Defendants deny the allegations in Paragraph 63.

**"COUNT I – SEX DISCRIMINATION PURSUANT TO MAINE HUMAN RIGHTS ACT**
**5 M.R.S. §4572(a)(a)**
**(Against NLEMMC)"**

64.    Defendants repeat and reassert their responses to Paragraphs 1-63 as if fully set forth herein.

65.    Defendants admit the allegations in Paragraph 65.

66.    Defendants deny the allegations in Paragraph 66.

67.    Defendants deny the allegations in Paragraph 67.

**"COUNT II – ANCESTRY AND NATIONAL ORIGIN DISCRIMINATION PURSUANT**
**TO MAINE HUMAN RIGHTS ACT**
**5 M.R.S. § 4572(1)(a)**
**(Against NLEMMC)"**

68.    Defendants repeat and reassert their responses to Paragraphs 1-67 as if fully set forth herein.

69.    Defendants admit the allegations in Paragraph 69.

70.    Defendants deny the allegations in Paragraph 70.

**"COUNT III – SEX DISCRIMINATION PURSUANT TO TITLE 7 OF THE CIVIL**
**RIGHTS ACT OF 1964 AS CODIFIED AS 42 U.S.C. §§2000e to 2000e-17"**

71.    Defendants repeat and reassert their responses to Paragraphs 1-70 as if fully set forth herein.

72.    Defendants admit the allegations in Paragraph 72, but deny these allegations are relevant to a claim of sex discrimination.

73.    Defendants deny the allegations in Paragraph 73.

**"COUNT IV – ANCESTRY AND NATIONAL ORIGIN DISCRIMINATION PURSUANT TO TITLE 7 OF THE CIVIL RIGHTS ACT OF 1964 AS CODIFIED AS 42 U.S.C. §§2000e to 2000e-17"**

74.     Defendants repeat and reallege their responses to Paragraphs 1-73 as if fully set forth herein.

75.     Defendants admit the allegations in Paragraph 75.

76.     Defendants deny the allegations in Paragraph 76.

**COUNT V – MAINE WHISTLEBLOWER PROTECTION ACT, 26 M.R.S. §833 et seq.
(Against NLEMMC)**

77.     Defendants repeat and reassert the allegations in Paragraphs 1-76 as if fully set forth herein.

78.     Defendants deny the allegations in Paragraph 78.

79.     Defendants deny the allegations in Paragraph 79.

80.     Defendants deny the allegations in Paragraph 80.

**COUNT VI – BREACH OF CONTRACT
(Against Defendants)**

81.     Defendants repeat and reassert the allegations in Paragraphs 1-79 as if fully set forth herein.

82.     Defendants deny that Dr. Waddell is a party to any contractual agreement with Plaintiff.  Defendants admit that Plaintiff and EMMC are parties to the agreements attached as Exhibits A and B.

83.     Defendants deny the allegations in Paragraph 83 and further state that, by asserting this Count VI, Plaintiff has breached Exhibit B.

84.     Defendants deny the allegations in Paragraph 84

### COUNT VII – INTENTIONAL INFLICTION OF EMOTIONAL OF DISTRESS
### (Against Defendants)

85.     Defendants repeat and reassert the allegations in Paragraphs 1-84 as if fully set forth herein.

86.     Defendants deny the allegations in Paragraph 86.

87.     Defendants deny the allegations in Paragraph 87.

88.     Defendants deny the allegations in Paragraph 88.

89.     Defendants deny the allegations in Paragraph 89.

### **AFFIRMATIVE DEFENSES**

A.      The Complaint fails, in whole or in part, to state a claim upon which relief can be granted.

B.      Plaintiff's breach of contract claim is barred by release and/or a covenant not to sue.

C.      Plaintiff has waived her breach of contract claim by executing a valid release in return for valuable consideration, which she received.

D.      Defendants are immune from civil liability, consistent with 24 M.R.S. §2511.

E.      Plaintiff's claims are barred, in whole or in part, by the exclusivity and immunity provisions of the Maine Workers' Compensation Act.

F.      If Plaintiff suffered any damages as a result of the alleged claims, which Defendants deny, Plaintiff failed to mitigate her damages.

G.      Plaintiff's claims are barred by the doctrine of estoppel.

H.      To the extent that during the course of this litigation Defendants acquire any evidence of wrongdoing by Plaintiff which would have materially affected the terms and

conditions of Plaintiff's employment, such after-acquired evidence shall bar Plaintiff on liability or damages, or shall reduce such claims as provided by law.

I.      To the extent Defendants have any burden of proof, Dr. Waddell is not a proper party in this case.

J.      Plaintiff's claims are barred, in whole or in part, by comparative and/or contributory negligence.

K.      Defendants acted in good faith at all times and had reasonable grounds for believing that their actions did not violate the law.

L.      To the extent Plaintiff's national origin, sex, or alleged protected activity were motivating factors—and Defendants deny they were motivating factors—EMMC would have made the same decision without consideration of Plaintiff's national origin, sex, or allegedly protected activity.

M.      Plaintiff's claims for compensatory and/or punitive damages are barred or capped in accordance with the statutory limits set forth in the MHRA, WPA, and/or Title VII applicable to an employer EMMC's size.

N.      Defendants reserve the right to rely upon such other and affirmative defenses as may become available during discovery and reserve the right to amend the Answer to assert any such defenses.

WHEREFORE, Defendants request that Plaintiff's Complaint be dismissed in its entirety, that Plaintiff be denied relief, and that judgment be entered for Defendants on all claims, together with their costs, attorneys' fees and such other relief as the Court deems just an proper.

## DEFENDANT EMMC'S COUNTERCLAIM AGAINST PLAINTIFF

Defendant Northern Light Eastern Maine Medical Center (EMMC) submits the following counterclaim against Plaintiff Maria Michailidou, M.D.:

1.      Plaintiff Maria Michailidou, M.D., was employed by EMMC as a physician from August 18, 2018 until November 17, 2020, when she submitted her resignation.

2.      EMMC's claim against Dr. Michailidou is sufficiently related to Dr. Michaeilidou's claims against EMMC that they form part of the same case or controversy under Article III of the United States Constitution.

3.      This Court has supplemental jurisdiction over EMMC's state law claim pursuant to 28 U.S.C. § 1367.

4.      Consistent with EMMC policy, upon hire, Plaintiff was required to complete a Focused Professional Practice Evaluation (FPPE), which allowed for physician oversight, review, and support of Plaintiff's work for a period of time.

5.      During the initial FPPE, Plaintiff was supervised by Dr. Brad Waddell, the Chief of Surgery, and a partner within the EMMC surgical team.

6.      Although Plaintiff successfully completed the initial FPPE, Dr. Waddell began receiving complaints from a variety of sources in late 2018 concerning Plaintiff's clinical competence and professionalism.

7.      Despite Dr. Waddell's and others' attempts to coach Plaintiff informally, the complaints concerning Plaintiff continued.

8.      Plaintiff's cases had a disproportionately high rate of poor clinical outcomes, including a retained object.

9.      In August of 2019, Plaintiff violated EMMC's privacy policy, accessing a patient record without a legitimate business reason.

10.     In late September 2019, the surgical group met and agreed that Plaintiff should be placed on a service-level corrective action.

11.     Dr. Waddell issued Plaintiff a written letter of concern.

12.     Thereafter, Dr. Waddell developed and implemented a second FPPE, which required extensive observation and proctoring by other physicians in the group, as well as emotional intelligence training.

13.     Although Plaintiff showed some initial improvements, performance-related concerns emerged again in the summer of 2020 concerning her improper handling of call responsibilities, failure to listen to or heed clinical guidance from senior partners, and failure to accept input from well-trained and highly experienced Physicians Assistants (PAs).

14.     In August 2020, Dr. Waddell began to receive complaints / concerns about Plaintiff's endoscopic competence.

15.     With the support of the other surgeons, Dr. Waddell drafted an update to Plaintiff's service-level FPPE.

16.     Before the updated FPPE was finalized, a series of additional and acute concerns arose relating to Plaintiff's clinical competence.

17.     First, endoscopy nurses reported numerous issues with a procedure Plaintiff performed, including that Plaintiff disregarded the advice of a gastroenterologist she called in to review the case, doing the exact opposite of what he asked her to do.

18.     Then, nursing staff called Dr. Waddell into another surgical procedure because there was a broken surgical needle tip missing, which Plaintiff reportedly could not locate and planned to leave behind.  Dr. Waddell helped Plaintiff locate and retrieve the retained item.

19.     Very shortly after this incident, the surgical PAs informed Dr. Waddell that they had lost faith in Plaintiff and no longer felt safe being assigned to assist her in surgery.

20.     Dr. Waddell contacted Senior Physician Executive Dr. Jim Clarke and informed him of these latest developments.

21.     After speaking with Dr. Waddell and one of the surgical PAs, Dr. Clarke determined that allowing Plaintiff to continue to perform surgeries would be unsafe.

22.     On October 9, 2020, EMMC placed Plaintiff on paid administrative suspension, pending investigation.

23.     Pursuant to 24 M.R.S. §2506, EMMC is required by law to report to the Maine Board of Medicine within 60 days of a practitioner's suspension or limitation of privileges. Section 2506 also requires EMMC to report to the Board of Medicine when a practitioner resigns "while under investigation or to avoid investigation for reasons related to clinical competence or unprofessional conduct, together with pertinent information relating to that action."

24.     After being placed on administrative suspension, Plaintiff retained counsel, Physicians Advocates.

25.     On October 22, 2020, Physicians Advocates contacted Northern Light corporate counsel, Megan Randlett, Esq.

26.     Thereafter, Plaintiff and EMMC, through their respective counsel, engaged in a negotiation concerning the terms of Plaintiff's separation from employment at EMMC.

27.     At all times, EMMC was forthcoming with Plaintiff's counsel regarding the fact that EMMC was legally required to report Plaintiff's suspension and termination or resignation, as applicable, to the Maine Board of Medicine.

28.     EMMC was also forthcoming with Plaintiff's counsel about the fact that Plaintiff would likely be terminated if she did not choose to resign because of the persistent concerns about her clinical competence.

29.     On November 16, 2023, Plaintiff's counsel wrote a letter to Ms. Randlett, confirming that they expected Plaintiff to "resign rather than be terminated."

30.     In this November 16, 2023 letter, Plaintiff's counsel thanked Ms. Randlett for offering to provide the language of the report that EMMC intended to make to the Maine Board of Medicine and requested a copy of Plaintiff's personnel file.

31.     On November 17, 2023, Plaintiff's counsel sent Ms. Randlett a copy of a letter from Plaintiff, formally resigning her employment.

32.     On November 30, 2023, Ms. Randlett replied to the November 16, 2023 letter, forwarding to Plaintiff's counsel a copy of Plaintiff's personnel file and a copy of the letter EMMC intended to send and later did send to the Maine Board of Medicine concerning Plaintiff's suspension and resignation.

33.     Further negotiations between EMMC and Plaintiff resulted in the Separation Agreement, attached as Exhibit B to the Complaint, which Plaintiff and EMMC executed on December 10 and 11, 2020, respectively.

34.     Paragraph 1 of the Separation Agreement reads, in relevant part, as follows: "Physician agrees that in exchange for Northern Light allowing her to resign, Physician will not pursue any potential breach of contract claims regarding the Employment Agreement.

Physician acknowledges that NLEMMC is required by law to report her suspension and resignation of employment to the Maine Board of Medicine."

35.     Notwithstanding Plaintiff's agreement to the terms of the Separation Agreement and notwithstanding the fact that she was in fact permitted to resign in lieu of termination, Plaintiff has asserted a breach of contract claim against EMMC regarding the Employment Agreement in this case.

36.     Plaintiff's assertion of a breach of contract claim against EMMC is a breach of the covenant not to sue and/or release contained in the Separation Agreement.

37.     EMMC has suffered and continues to suffer damages as a result of Plaintiff's breach, including in the form of attorneys' fees incurred to answer Plaintiff's Complaint and file a Motion to Dismiss, asserting the covenant not to sue as an affirmative defense.

WHEREFORE, Defendant / Counterclaim Plaintiff EMMC requests judgment against Plaintiff in an amount that will fairly compensate EMMC for its damages, equitable relief sufficient to restrain Plaintiff from further violations of the Separation Agreement, and an award of attorney's fees and costs.

Dated: September 27, 2023          /s/ Katharine I. Rand
                                   Katharine I. Rand

                                   Pierce Atwood LLP
                                   Merrill's Wharf
                                   254 Commercial Street
                                   Portland, Maine 04101
                                   207-791-1100
                                   krand@pierceatwood.com

                                   *Counsel for Defendants Northern Light Eastern Maine Medical Center and Brad E. Waddell, M.D.*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

**CERTIFICATE OF SERVICE**

I hereby certify that on September 27, 2023, I served a copy of Defendants' Answer to

Complaint and Defendant Northern Light Eastern Maine Medical Center's Counterclaim Against

Plaintiff, with the Clerk of Court using the CM/ECF system, which will send notification of such

filing(s) to the following:

Adam R Lee, Esq.
Trafton, Matzen, Belleau & Frenette, LLP
10 Minot Avenue
PO Box 470
Auburn, ME 04212-0470
alee@tmbf-law.com

Dated: September 27, 2023           /s/ Katharine I. Rand
                                    Katharine I. Rand

                                    Pierce Atwood LLP
                                    Merrill's Wharf
                                    254 Commerical Street
                                    Portland, Maine 04101
                                    207-791-1100
                                    krand@pierceatwood.com

                                    *Counsel for Defendants Northern Light Eastern*
                                    *Maine Medical Center and Brad E. Waddell, M.D.*